UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:                                                                          Case No. 8-18-75747-reg

     Gerald N. Daffner,                                          Chapter 7

               Debtor.

-------------------------------------------------------------------X

Palisades Tickets, Inc.,

               Plaintiff
                                          Adv. Pro. No. 18-08143-reg

       -against-

Gerald N. Daffner,

               Defendant.

-------------------------------------------------------------------X

## <u>Decision After Trial</u>

     Before the Court is an adversary proceeding commenced by Palisades Tickets, Inc. (the "Plaintiff") seeking a judgment awarding $238,518.07 in damages for actual and constructive fraud under the New York Debtor and Creditor Law (the "DCL") §§ 270-281. The Plaintiff also asks the Court to find that the Plaintiff's claim of $238,518.07 against Gerald N. Daffner (the "Debtor" or the "Defendant") is non-dischargeable under §§ 523(a)(4) and (6) of the Bankruptcy Code (the "Code"). The Defendant is an attorney licensed to practice in New York who represented Michael Petrillo, Helane Karon David, and their businesses, Trinity Tickets Tours Travel Ltd, Triple Crown Entertainment LLC, Mainline Consultants Ltd, and Event Corporation (the "Judgment Debtors") in a state court action by the Plaintiff against the aforementioned individuals and entities which resulted in the entry of a judgment. The Defendant did not represent the Judgment Debtors in the litigation but was retained by them with regard to post-

judgment matters. The Plaintiff alleges that the Defendant participated with his clients in a scheme to prevent the Plaintiff from collecting from the Judgment Debtors the money owed to the Plaintiff. The Defendant acknowledges that he received money from his clients from bank accounts they closed. He also acknowledges that he deposited the funds he received into his IOLA account. The Defendant admits that at the direction of his client, he disbursed funds to them, to third parties and to himself from the IOLA. The Defendant maintains that at all times he was acting in accordance with his clients' instructions and in a manner consistent with his prior practice with Helane Karon David and Michael Petrillo.

The Plaintiff's standing to bring the non-dischargeability claims in this action is predicated on its status as a creditor of the Defendant.  The Plaintiff does not allege that the Defendant breached a contract with the Plaintiff or committed a tortious act with respect to the Plaintiff.  In fact, the Plaintiff fails to allege any direct relationship with the Defendant that caused the Plaintiff to incur damages.  The Plaintiff argues that its standing as a creditor arises due to the Defendant's violation of a state statute.  According to the Plaintiff, the Defendant was a transferee of fraudulent conveyances from his clients, the Judgment Debtors, in violation of sections 270-281 of the DCL.  Under the Plaintiff's analysis, the fact that the Defendant received the transfers and deposited the funds into his IOLA while acting as counsel to the Judgment Debtors is irrelevant.  However, the record before the Court establishes that the Defendant acted at all times as an attorney on behalf of his clients, which is pivotal in determining whether the Defendant violated the relevant DCL sections relied upon by the Plaintiff. The bulk of the transfers made by the Judgment Debtors remained in the Defendant's IOLA, and were subsequently transferred to third parties or back to the Judgment Debtors at the express direction of the Judgment Debtors.  Under applicable New York case law, an attorney who accepts funds

from a client but does not exercise dominion and control over those funds is not a transferee for the purposes of the DCL.  Because there is no evidence to support a finding that the Defendant had control over the disposition of these funds in the IOLA, the Defendant was not a statutory transferee of any fraudulent transfers under New York law. With respect to the portion of funds the Defendant did receive from the IOLA as payment for his legal services and as reimbursement for making transfers from his personal account by mistake, the Plaintiff has failed to establish on a *prima facie* basis that these transfers are recoverable as either intentional or constructive fraudulent conveyances under the DCL.

Even if the Court were to determine that the Plaintiff is a creditor of the Defendant, the liability resulting from such a finding against the Defendant would be dischargeable, as the Plaintiff has failed to establish a *prima facie* case with respect to sections 523(a)(4) and (a)(6). Courts narrowly construe non-dischargeability claims, as the consequences to the debtor are severe. As for §523(a)(4), the Plaintiff has failed to plead or prove its case. The Plaintiff does not allege that the Defendant acted as its fiduciary at any point. The record at trial is equally deficient regarding the elements of §523(a)(4) with respect to larceny and embezzlement, as there is no evidence that the Defendant stole or misappropriated any funds.

The Plaintiff also failed to establish the elements of §523(a)(6). A plaintiff must prove that the debt it seeks to exempt from discharge arose from the Defendant's willful and malicious conduct. The record at trial does not reflect that in receiving and disbursing the Judgment Debtors' funds on their behalf, the Defendant intended to cause injury to the Plaintiff, specifically to thwart the Plaintiff from satisfying its judgment against the Judgment Debtors. The Defendant, as an attorney, was obligated to abide by the Judgment Debtors' decisions concerning his representation and to distribute funds that the Defendant held on behalf of the

Judgment Debtors as they directed. The Plaintiff urges the Court to find that the Defendant's conduct was not motivated by his duties to his clients and was instead deliberately designed to hurt the Plaintiff. The Plaintiff's failure to obtain testimony from any of the Judgment Debtors leaves the Court with no avenue to verify whether the purported scheme to injure the Plaintiff ever existed. The Plaintiff's failure to establish the existence of the scheme precludes a finding that the Defendant acted in pursuit of the alleged scheme's objective. The record before the Court establishes that the Defendant acted as an attorney in compliance with his clients' wishes, and therefore there is no evidentiary basis to support a finding that the Defendant acted wrongfully and without just cause as required pursuant to section 523(a)(6). For these reasons, and as more fully set forth below, the complaint shall be dismissed in its entirety.

### *Procedural History*

The Defendant filed a petition for relief under Chapter 7 of the Bankruptcy Code on August 24, 2018 (the "Petition Date") as a no-asset case. The Plaintiff filed a proof of claim in the amount of $238,518.07 on October 12, 2018.  The Defendant received a discharge under 11 U.S.C. § 727 on November 28, 2018. The Chapter 7 Trustee filed a report of no distribution on January 28, 2019.

The Plaintiff filed this adversary complaint on October 25, 2018 alleging that the Defendant's debt to the Plaintiff is non-dischargeable under 11 U.S.C. §§ 523(a)(4) and (6) and seeking to recover transfers made for actual and constructive fraud under New York Debtor and Creditor Law §§ 270-281 in the amount of $238,518.07 (the "Complaint").[1] The Defendant filed an answer on November 21, 2018. The parties filed a Joint Pre-Trial Memorandum containing

---

[1] Although the Plaintiff may not obtain a monetary judgment against the Debtor in this Court for the recovery of fraudulent conveyances, the Court is treating the DCL claims as an attempt to establish a debtor-creditor relationship between the parties.

twenty-seven exhibits on October 7, 2019, and a trial was held on October 15, 2019. The

Defendant testified as a witness. None of the Judgment Debtors appeared as witnesses. At the

conclusion of the trial, the matter was marked submitted.

***Facts[2]***

The Debtor is an attorney who was admitted to practice law in 1960. He represented the

Judgment Debtors in connection with a state court lawsuit filed by the Plaintiff. The Defendant

did not represent the Judgment Debtors during the course of the lawsuit itself but did so in the

subsequent challenge to the judgment entered against them and in connection with the Plaintiff's

attempts to satisfy the judgment.

**The State Court Action**

The Plaintiff commenced an action against the Judgment Debtors for breach of a joint

venture agreement, breach of contract, and an accounting with respect to the sale of show tickets

on December 11, 2006 in the Supreme Court, State of New York, County of New York under

Index Number 604228/06 (the "State Court Action").[3] Attorney Henry Gonzalez represented the

Judgment Debtors at that time. The Judgment Debtors, through Mr. Gonzalez, agreed to pay

$300,000 in installment payments in settlement of the State Court Action in a stipulation filed on

February 8, 2007. In the event of a default, the Judgment Debtors stipulated to entry of a

judgment in the amount of $450,000 with interest from September 15, 2006. The Judgment

Debtors defaulted on the stipulation in March 2007. Judgment was subsequently entered in favor

---

[2] The facts herein are derived from the stipulated facts in the Parties' Joint Pre-Trial Memorandum, October 7, 2019, ECF No. 8, Defendant's testimony at trial, and the Parties' Exhibits unless stated otherwise.
[3] The State Court Action caption was amended on August 16, 2007 from "Michael Petrillo, Helene Petrillo, Helene Petrillo d/b/a Trinity Tickets Tours and Travel, Helene Petrillo d/b/a Triple Crown Entertainment, Helene Petrillo d/b/a Main Line Consultants and Event Corp." As such, any reference herein to Helane Karon David is inclusive of "Helene Petrillo."

of the Plaintiff on May 17, 2007 in the sum of $448,644.45 (the "Judgment"). The Plaintiff served restraining notices and subpoenas to take deposition on Michael Petrillo and Helane Karon David on June 5, 2007.

The Judgment Debtors retained the Defendant as their counsel on June 25, 2007. The Defendant testified that there was no written retainer agreement. On July 10, 2007, a Sheriff's Notice of Levy and Sale was issued to the Judgment Debtors for $481,910.67. The Defendant appeared in the State Court Action on July 18, 2007 to move to vacate the Judgment. The motion to vacate was settled on August 9, 2007 by a so ordered stipulation and deferral agreement, filed August 16, 2007, where immediate collection of the Judgment was deferred, and the Judgment Debtors agreed to pay the Plaintiff $350,000 with interest from March 1, 2007 in installment payments ranging from $10,000 to $30,000 (the "So Ordered Stipulation and Deferral Agreement"). The Judgment Debtors paid the installments required by the So Ordered Stipulation and Deferral Agreement between September, 2007 and February, 2008, totaling $60,000. On October 13, 2007, the Defendant issued a personal check, No. 541, to the Plaintiff's counsel as an installment payment on behalf of the Judgment Debtors. At trial, the Defendant testified he informed the Plaintiff's counsel of the mistake and that the Plaintiff's counsel accepted the payment.

The Judgment Debtors then defaulted on the $20,000 installment payment due on March 1, 2008. The Plaintiff faxed a notice of default to the Defendant on March 4, 2008. The Judgment Debtors failed to cure the default and therefore breached the So Ordered Stipulation and Deferral Agreement. Judgment was entered against the Judgment Debtors on April 9, 2008 in the sum of $390,830. That judgment remains largely unsatisfied, and over $370,000, together with interest, remains outstanding. Complaint ¶22.

6

The Defendant testified at trial that he withdrew from representing the Judgment Debtors after they defaulted on their payment plan but that he represented Helane Karon David and Michael Petrillo as a favor in connection with two post-judgment depositions.

### The Closing of the Judgment Debtors' Bank Accounts

Between 2006 and 2008, numerous bank accounts in the name of the Judgment Debtors were closed. On May 18, 2007, Judgment Debtor Main Line Consultants closed HSBC checking account x9625-1, and Judgment Debtor Event Corporation closed HSBC checking account x9799-1. The Plaintiff served Restraining Notices and Information Subpoenas on HSBC Bank on May 23, 2007. The bank responded that Judgment Debtors Michael Petrillo and Trinity Tickets Tours & Travels, Inc.[4] maintained accounts there. Judgment Debtor Event Corporation closed HSBC account x3040-2 on September 12, 2007 and HSBC account x1315-3 on October 30, 2007. On February 6, 2008, Judgment Debtor Michael Petrillo closed HSBC account x8085-3.

By April, 2008, at least eight bank accounts held by the Judgment Debtors had been closed. Judgment Debtor Helane Karon David closed her HSBC account x1546-0 on August 14, 2008. On August 27, 2008, the Defendant wrote a letter to the Plaintiff's counsel enclosing letters from HSBC stating that the Judgment Debtors' account had no funds on deposit.[5]

The Plaintiff served the Defendant with a Notice to Garnishee, an Information Subpoena and Restraining Notice on November 30, 2009. The Defendant submitted his responses on December 16, 2009. Question two asked whether the Defendant maintained any accounts where he held sums for the benefit of the Judgment Debtors. The Defendant responded that he did not.

---

[4] The amended caption lists the relevant party as "Trinity Tickets Tours & Travels, Ltd" while HSBC's response refers to "Trinity Tickets Tours & Travels, Inc."

[5] The Court is unable to identify which Judgment Debtor's account was referred to in Defendant's letter, as Defendant's letter, Ex. 19, did not identify which Judgment Debtor's account had no funds and purports to enclose HSBC letters that were not attached to the exhibit.

On December 21, 2009, the Defendant wrote a letter to the Plaintiff's counsel stating he "maintained no accounts for the defendant Helane Petrillo, or any other defendants. All funds were deposited in my IOLA for Helane Karon David, as stated in my Answers. All funds have been expended, pursuant to her direction, as stated in my answers."

### The Defendant's IOLA

The Defendant practiced law out of New York City until October, 2000. He now maintains his practice on Long Island. The Defendant maintained an IOLA[6] with Citibank in New York City (the "New York City IOLA") until February, 2007 when the Defendant opened a new IOLA at Citibank in Mineola (the "Defendant's IOLA"). The Defendant's IOLA remains open, while the New York City IOLA is closed. The Plaintiff alleges that the Defendant's IOLA was the vehicle used in a scheme to hide moneys from the Plaintiff and to render the Judgment impossible to satisfy.

The Defendant testified that he had a practice of holding money for the Judgment Debtors, specifically Helane Karon David, that began in the late 1990s. Ms. David was originally a client who sought the Defendant's services as a tax attorney. She testified at a post-judgment deposition in the State Court Action on July 22, 2009 that she would give money to the Defendant to be held for her benefit. Ex. 20. Judgment Debtor Michael Petrillo similarly testified

---

[6] An "Interest on Lawyers Account" ("IOLA") is "an unsegregated interest-bearing deposit account . . . for the deposit by an attorney of qualified funds." N.Y. Jud. Law § 497(1). "Qualified funds" are "moneys received by an attorney in a fiduciary capacity from a client or beneficial owner and which, in the judgment of the attorney, are too small in amount or are reasonably expected to be held for too short time to generate sufficient interest to justify the expense of administering a segregated account for the benefit of the client or beneficial owner." *Id.* at § 497(2). "Funds received by an attorney from a client or beneficial owner in the course of the practice of law" are received in a fiduciary capacity. *Id.* at § 497(2-a). "The decision as to whether the funds are nominal in amount or expected to be held for a short period of time rests exclusively in the sound judgment of the lawyer or law firm." *Id.* at § 497(4)(b). An attorney is not "liable in damages" and will not be "held to answer for a charge of professional misconduct because of a deposit of moneys to an IOLA pursuant to a judgment in good faith that such moneys were qualified funds." *Id.* at § 497(5).

at a post-judgment deposition in the State Court Action on May 14, 2009 that he would provide

the Defendant with money to hold on his behalf and ask for the money back whenever he needed

it. Ex. 21. The Defendant testified at trial that the Judgment Debtors would provide instructions

regarding any moneys in the Defendant's IOLA orally.

***The Transfers Between the Judgment Debtors and the Defendant's IOLA (The "Transfers")***

The Transfers occurred between February, 2007 and April, 2008, where approximately

$245,000 was transferred from the Judgment Debtors to the Defendant's IOLA and either back

to the Judgment Debtors or to third parties pursuant to the Judgment Debtors' instruction.

Exhibits four (the "Schedule of Deposits") and five (the "Schedule of Disbursements") were

prepared by the Defendant upon the order of the Hon. Carol R. Edmead, Justice, Supreme Court,

New York County pursuant to a post-judgment motion filed by the Plaintiff seeking to hold the

Defendant in contempt. These exhibits were prepared to accurately reflect receipts and

disbursements during the relevant time period.[7]

By October 31, 2007, the Judgment Debtors had already transferred $186,066.77 to

deposit in the Defendant's IOLA. The Defendant received an additional $61,451.30 in March,

2008. Throughout the same period, the Defendant disbursed checks to the Judgment Debtors,

including checks to "cash" despite the Schedule of Disbursements indicating that the

disbursements went to specific Judgment Debtors.

Between March 5, 2008 – the day after Plaintiff faxed its Notice of Default to the

Defendant – and April 30, 2008, the Defendant returned $57,790.79 to the Judgment Debtors or

---

[7] However, the parties stipulate that the Schedule of Deposits incorrectly totals $238,518.07 instead of $247,518.07. Further, the Court observed that the schedules show roughly $50,000 in disbursements were made prior to March 12, 2007 even though only $14,000 had been deposited in the account prior to March 12, 2007. The Defendant stated that he was "baffled" in response and speculated that there must have been other funds in the IOLA.

to third parties while the Judgment Debtors were in breach of the So Ordered Stipulation and Deferral Agreement. The disbursements were made at the direction of the Judgment Debtors.

At trial, the Defendant stated that he disbursed the Judgment Debtors' funds in amounts as requested by his clients and at times totaled those smaller disbursements together on the Schedule of Disbursements for convenience. For example, between March 13, 2008 and April 8, 2008, the Defendant wrote a total of 23 checks to Judgment Debtor Helane Karon David alone, aggregating $34,150.

Between February 2007, and April, 2008 the Judgment Debtors completed 19 separate transfers to the Defendant totaling $247,518.07. The Defendant thereafter made 81 separate transfers, totaling $244,724.78 back to the Judgment Debtors or for their benefit. The April 9, 2008 judgment remains unsatisfied in the amount of $370,206.62 plus interest. Complaint ¶22.

***The State Court Action Against Defendant-Debtor***

The Plaintiff filed a state court action against the Defendant in the Supreme Court, State of New York, County of New York alleging that the Defendant was a transferee of the Judgment Debtors' funds under certain sections of the New York Debtor-Creditor Law and was therefore liable for fraudulent transfers (the "Daffner Action"). Ultimately, the complaint was amended to contain five causes of action, including causes of action arising under the New York Debtor-Creditor law. The Plaintiff alleged that the Defendant (1) used his bank account to conceal the Judgment Debtors' assets and make them unavailable for attachment; (2) conspired with the Judgment Debtors to conceal their assets and hinder the Plaintiff's collection efforts; (3) assisted the Judgment Debtors in making the Transfers without fair consideration; (4) committed acts that constitute constructive fraudulent conveyances; and (5) knowingly assisted the Judgment Debtors in the fraudulent concealment of assets. The Defendant thereafter filed a pre-answer

motion to dismiss the amended complaint on various grounds. The court denied the Defendant's motion to dismiss and directed the Defendant to file an answer, which the Defendant filed.

After motion practice and the Defendant's failure to comply with discovery requests, the Defendant's answer was stricken in the Daffner Action, and the case was placed on the State Court trial calendar for an inquest as to damages. The inquest has been stayed as a result of this Bankruptcy case.

### The Parties' Positions

The Plaintiff contends that the Defendant willfully and maliciously participated in a scheme with the Judgment Debtors to conceal the Judgment Debtors' assets from the Plaintiff. The Plaintiff alleges that even though the Defendant had full knowledge of the Judgment Debtors' status as judgment debtors, he received money for no consideration and concealed that money in his IOLA, thereby removing the money from accounts titled in the Judgment Debtors' names and shielding it from attachment. The Plaintiff alleges that in furtherance of the concealment, the Defendant returned the money to the Judgment Debtors by contemporaneously issuing multiple checks in small amounts and paying many checks to "cash." The Plaintiff argues that the Defendant's concealment of the Judgment Debtors' assets has prevented the Plaintiff from recovering on the Judgment.

The Defendant contends that he received and disbursed his clients' money in the Defendant's IOLA as instructed by his clients to whom he owed a fiduciary duty. The Defendant further contends that he owed no such fiduciary duty to the Plaintiff.

### Discussion

The Plaintiff has standing to bring this non-dischargeability suit only if it is a creditor. *See* 11 U.S.C. § 523(c)(1) (A claim pursuant to section 523(a)(2), (4), or (6) may only be brought

by "the creditor to whom such debt is owed . . .."). A creditor is "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10). A claim is defined as a "right to a payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). The Code's definition of "claim" is expansive. *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) ("Congress intended by this language to adopt the broadest available definition of 'claim.'").

The Plaintiff does not claim creditor status by virtue of a direct relationship with the Defendant. It asserts creditor status solely on a statutory basis under the DCL. Specifically, the Plaintiff alleges the Defendant transcended his role as an attorney by conspiring with his clients to thwart the Plaintiff's collection efforts in violation of the sections of the DCL concerning fraudulent conveyances. Accordingly, the Plaintiff's status as a creditor and standing to bring this adversary proceeding are dependent on the viability of its DCL claims against the Defendant.

## I.    *The Defendant's Role as an Attorney*

Before the Court addresses the merits of the Plaintiff's claims, it must address the role of the Defendant as attorney for the Judgment Debtors and the duties he owed to them, as the Plaintiff's claims against the Defendant require a finding that the Defendant acted as a co-conspirator with the Judgment Debtors and not as their attorney. "Courts look to the Code of Professional Responsibility in analyzing conflicts under the Bankruptcy Code." *In re Enron Corp.,* No. 01-16034 (AJG), 2002 WL 32034346, at *12 (Bankr. S.D.N.Y. May 23, 2002) (citing *In re Caldor, Inc.,* 193 B.R. 165, 178 (Bankr. S.D.N.Y. 1996)). The New York Rules of

Professional Conduct (the "NYRPC") replaced the New York Code of Professional Conduct,

effective April 1, 2009. Rule 1.2 of the NYRPC provides, "a lawyer shall abide by a client's

decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult

with the client as to the means by which they are to be pursued." In citing to the NYRPC's

predecessor, the *In re September 11 Litigation* court stated:

> Under the New York Code of Professional Responsibility, a lawyer
> assumes the absolute duty to represent his or her client zealously
> within the bounds of the law. Such obligation stems from the
> fundamental premise that in our government of law and not of
> individuals, each member of our society is entitled to have his or her
> conduct judged and regulated in accordance with the law; to seek
> any lawful objective through legally permissible means; and to
> present for adjudication any lawful claim, issue or defense. Thus, in
> undertaking to represent a client zealously, the lawyer must not
> intentionally prejudice or damage the client during the course of the
> professional relationship. The lawyer's obligations run directly to
> the interests of his client, and it is the client who serves as the
> lawyer's master throughout the course of the professional
> relationship. A lawyer who is concerned with the potential legal
> consequences to him of serving his client zealously is in a position
> of conflict.

*In re Sept. 11 Litig.,* 236 F.R.D. 164, 170 (S.D.N.Y. 2006) (internal citations and quotations

omitted).

Further, a lawyer is required to "promptly pay or deliver to the client or third person as

requested by the client or third person the funds, securities, or other properties in the possession

of the lawyer that the client or third person is entitled to receive." NYRPC 1.15(c)(4).[8] Comment

[4] of Rule 1.15 provides in pertinent part:

> Paragraph (c)(4) also recognizes that third parties may have lawful
> claims against specific funds or other property in a lawyer's custody,
> such as a client's creditor who has a lien on funds recovered in a
> personal injury action. A lawyer may have a duty under applicable
> law to protect such third-party claims against wrongful interference

---

[8] The Court questions whether the Defendant maintained the books and records of his legal practice as
required under NYRPC 1.15 but does not reach the issue, as it is not before the Court.

> by the client. In such cases, when the third-party claim is not
> frivolous under applicable law, the lawyer must refuse to surrender
> the property to the client until the claims are resolved.

NYRPC 1.15 cmt. 4. It is worth noting that the Plaintiff has not established that it has a claim

against "specific funds" or a "lien on funds." Important in establishing the Defendant's duties,

the Plaintiff admits that the funds in the Defendant's IOLA account were the property of the

Judgment Debtors:

> All the while, between the period February 27, 2007 through August
> 7, 2007, and then continuing through April 30, 2008, as herein after
> set forth, the Judgment Debtors in the [State Court Action], assisted
> by Gerald Daffner, Defendant herein, transferred sums to Defendant
> Daffner in an effort to, inter alia, conceal **their funds**, make **their
> funds** unavailable for attachment, and otherwise impair, impede and
> prevent the collection of [Plaintiff's] Judgment, rendering the
> Judgment Debtors insolvent.

Complaint ¶19. The Plaintiff also admits that it has been unable to attach its claim to the

Judgment Debtors' accounts or funds and uses that allegation to support its causes of action.

Complaint ¶47. Further, the So Ordered Stipulation and Deferral Agreement established a

"security interest in [the Judgment Debtors'] accounts receivable, furniture, fixtures, equipment,

and inventory" in favor of the Plaintiff but failed to attach the debt to the specific funds that

belonged to the Judgment Debtors, other than accounts receivable, or the specific funds in

Defendant's IOLA. Ex. 15. The Plaintiff has not submitted any evidence to establish that the

funds in the Defendant's IOLA came from accounts receivable covered by the So Ordered

Stipulation and Deferral Agreement. Thus, the Plaintiff has failed to establish that it was entitled

to the specific funds held for the Judgment Debtors' benefit in the Defendant's IOLA. *Cf. Leon

v. Martinez,* 84 N.Y.2d 83, 89-90 (1994) (Finding in the context of a motion to dismiss that a

third party might be "entitled" to funds where the "client has conveyed a right to [the] funds by

an enforceable assignment"). Accordingly, the Defendant owed duties to the Judgment Debtors

to abide by their decisions concerning the matters in which the Defendant represented them and to distribute the Judgment Debtors' funds from the Defendant's IOLA when requested by them pursuant to NYRPC 1.2, 1.4 and 1.15.

While it is not inconceivable that an attorney could venture beyond these duties to conspire with his or her client to injure the client's creditor, the record cannot support a finding that such a circumstance exists here. The Defendant testified that he received and distributed the Judgment Debtors' funds to and from the Defendant's IOLA in accordance with a practice of doing so dating back several years prior to the State Court Action. The evidence supports the Defendant's testimony. In their 2009 post-judgment depositions, Helane Karon David and Michael Petrillo both asserted that the Judgment Debtors would regularly provide the Defendant with funds to be held in and disbursed from the Defendant's IOLA pursuant to their instructions. Ex. 20, 21. The Defendant had an affirmative duty to adhere to the Judgment Debtors' instructions in doing so pursuant to the NYRPC. The Plaintiff has not offered any evidence to contradict the Defendant's testimony or establish that the Defendant ventured beyond his duties. The Plaintiff urges the Court to find that the Defendant received and disbursed the Judgment Debtors' funds in furtherance of a conspiracy with the Judgment Debtors to ensure the debt owed to the Plaintiff was uncollectable, not because the Defendant was obligated to adhere to the Judgment Debtors' instructions concerning their money pursuant to the NYRPC. Importantly, the Plaintiff failed to call any of the Judgment Debtors as a witness. The Judgment Debtors were the only parties who could confirm whether the Defendant's conduct was motivated by a conspiracy to defraud the Plaintiff, or any other purpose separate from the duties that the Defendant affirmatively owed to the Judgment Debtors. The record precludes a finding that the Defendant acted as anything other than an attorney to the Judgment Debtors. The Court must

therefore determine whether the Defendant, in acting as an attorney to the Judgment Debtors, violated the sections of the DCL that pertain to fraudulent conveyances.

**II.    *Claims Under the New York Debtor and Creditor Law***

***A. Applicable Legal Standards***

*1. Actual Fraud*

Section 276 of the DCL provides that "every conveyance made and every obligation incurred with actual intent ... to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." This section authorizes a party "to avoid transactions which have the purpose or effect of removing property from a debtor's estate which should properly be used to repay creditors." *Kramer v. Mahia (In re Kahn),* No. 11-01520 (PKC) (ESS), 2014 WL 10474969, at *21 (E.D.N.Y. Dec. 24, 2014) (citing *Strauss v. Sixty-Five Brokers, (In re Churchill Mortg. Inv. Corp.),* 256 B.R. 664, 675 (Bankr. S.D.N.Y. 2000)). To prevail on a claim under section 276 of the New York Debtor and Creditor law, a party must establish that "(1) the thing transferred has value out of which the creditor could have realized a portion of its claim; (2) that this thing was transferred or disposed of by debtor; and (3) that the transfer was done with actual intent to defraud." *Kahn,* 2014 WL 10474969, at *21. A plaintiff "must show intent to defraud on the part of the transferor." *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.),* 403 F.3d 43, 56 (2d Cir. 2005). A transferor's intent may be inferred from the circumstances surrounding of the transaction. *Id.* The Plaintiff must prove its claim under DCL § 276 by clear and convincing evidence. *Messer v. Chu (In re Xiang Yong Gao),* 560 B.R. 50, 63 (Bankr. E.D.N.Y. 2016).

*2. Constructive Fraud Pursuant to DCL §§ 273, 274, and 275*

The DCL provides several paths to recover a constructively fraudulent transfer:

> [A] conveyance by a debtor is deemed constructively fraudulent if it is made without 'fair consideration,' and ... one of the following conditions is met: (i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274; or (iii) the transferor believes that it will incur debt beyond its ability to pay, DCL § 275.

*Sharp,* 403 F.3d at 53. The Plaintiff must prove its claim for a constructive fraudulent conveyance pursuant to DCL §§ 273, 274, and 275 by a preponderance of the evidence. *Kahn*, 2014 WL 10474969, at *77.

### 3. Constructive Fraud Pursuant to DCL § 273-a

Section 273-a of the DCL provides a separate path to recover a constructive fraudulent conveyance. Section 273-a provides:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

DCL § 273-a. A plaintiff must establish "(1) that the conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) that the defendant has failed to satisfy the judgment." *Mitchell v. Garrison Protective Servs., Inc.,* 819 F.3d 636, 641 (2d. Cir. 2016) (internal citations omitted).

### B. Application

### 1. The Defendant's Status as a "Transferee"

The New York Court of Appeals has held that the DCL does "not, either explicitly or implicitly, create a creditor's remedy for money damages against parties who . . . were neither

transferees of the assets nor beneficiaries of the conveyance." *Fed. Deposit Ins. Corp. v. Porco*,
75 N.Y.2d 840, 842 (1990). The analysis does not change when the alleged wrongdoer is an
attorney. *Mendelsohn v. Paragon Mortg. Bankers Corp., et. al. (In re Parker)*, 399 B.R. 577, 581
(Bankr. E.D.N.Y. 2009). As articulated in *State Farm Mut. Auto. Ins. Co. v. Grafman*, No. 04-cv-
2609 (NG) (SMG), 2017 WL 4217122 (E.D.N.Y. Sept. 21, 2017), a party's status as transferee is
dependent on whether they exercised dominion and control over the transferred property.
*Grafman,* 2017 WL 4217122, at *3. A party is not a transferee simply because property passed
through its hands. *Id.*

In *Grafman*, a plaintiff who was unable to satisfy its judgment asserted a fraudulent
conveyance cause of action against the judgment debtor's attorney, among others. *Grafman*,
2017 WL 4217122, at *1. The property at issue consisted of proceeds from the sale of real
property that were deposited into the attorney's IOLA and distributed pursuant to the client's
instructions. *Id.* The attorney retained only what was owed to him for his accounting and legal
services. *Id.* The plaintiff sought to recover a money judgment for all of the proceeds deposited
in the attorney's IOLA. *Id.* The court rejected the plaintiff's contentions that the transfers into the
attorney's IOLA fell within the parameters of DCL § 278[9] and that there was no exception for

---

[9]  DCL § 278 provides:

> 1. Where a conveyance or obligation is fraudulent as to a creditor, such
> creditor, when his claim has matured, may, as against any person except a
> purchaser for fair consideration without knowledge of the fraud at the time
> of the purchase, or one who has derived title immediately or mediately
> from such a purchaser,
> a. Have the conveyance set aside or obligation annulled to the extent
> necessary to satisfy his claim, or
> b. Disregard the conveyance and attach or levy execution upon the
> property conveyed.
> 2. A purchaser who without actual fraudulent intent has given less than a
> fair consideration for the conveyance or obligation, may retain the
> property or obligation as security for repayment.

transfers to parties who were mere conduits without dominion or control over the transferred property. *Id.* at *3. The court then observed that "New York state courts have held that dominion or control . . . is necessary to state a claim under a fraudulent transfer theory." *Id.* It further clarified that the test for whether a party is a transferee is whether it exercised dominion and control over the property, not whether the property merely passed through its hands. *Id.* Since the attorney in *Grafman* never exercised dominion or control over his client's assets in his IOLA, no transfer occurred, and the attorney was not a statutory transferee. *Id.* at *4

Like *Grafman,* the Plaintiff here seeks to hold the Defendant liable as a transferee pursuant to the DCL for funds provided by the Defendant's clients to be held in his IOLA and distributed as directed by his clients. Like *Grafman,* the funds in the Defendant's IOLA belonged to his clients and were subject to their instructions. As discussed above, the Defendant was an attorney for the Judgment Debtors. He was a fiduciary who was not permitted to commingle the Judgment Debtors' funds with his own or to use them for his own purposes. The Plaintiff did not allege that the Defendant had the authority to deviate from the Judgment Debtors' instructions concerning the funds in the Defendant's IOLA or to use them for his own purposes. At no point did the Defendant exercise dominion or control over the funds in his IOLA. As such, the Judgment Debtors' funds were not transferred to the Defendant when the Judgment Debtors provided the Defendant with money to deposit in the Defendant's IOLA.  After the funds were deposited into the Defendant's IOLA, the bulk of the funds were transferred to third parties or back to the Judgment Debtors at the request of the Judgment Debtors.  These funds cannot be subject to recovery as fraudulent conveyances because the Defendant had no dominion or control of them at any time.  Therefore, the only transfers that are subject to the DCL are the funds the Defendant received as payment for legal fees and the $10,000 reimbursement for the installment

payment that the Defendant mistakenly sent to the Plaintiff from his personal account. Because these funds became subject to the Defendant's dominion and control, the Defendant is a transferee with respect to these funds alone, which total $30,789.32. Ex. 5. The Court must therefore determine whether the payment of the Defendant's legal fees and reimbursement of the $10,000 installment payment constituted fraudulent conveyances pursuant to the DCL.

*2. Actual Fraud Application*

The record shows that the first two elements have been established. The funds in the Defendant's IOLA could have been used to pay the Plaintiff what it was owed pursuant to its Judgment, just as they were used to pay the Defendant. Moreover, as discussed above, the funds were transferred to the Defendant. The Court is therefore left to determine whether the Plaintiff established that the Judgment Debtors actually intended to defraud the Plaintiff.

The Plaintiff failed to plead the third element correctly, let alone prove it. The Plaintiff must prove the actual intent of the transferors, the Judgment Debtors. *Sharp*, 403 F.3d at 56. The Plaintiff's pleadings are entirely founded upon the intent of the Defendant, the alleged transferee. *See* Complaint ¶¶ 67-79. Without properly pleading the fraudulent intent of the transferors, the Plaintiff has not alleged each element of DCL § 276.

Even if the Plaintiff alleged that the Judgment Debtors intended to defraud the Plaintiff, it still failed to provide sufficient evidence to prove it. In light of the difficulty in establishing actual intent, a plaintiff may rely on the badges of fraud to make its case. *Sharp*, 403 F.3d at 57. The badges of fraud include:

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;

> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
> (6) the general chronology of the events and transactions under inquiry.

*Kahn,* 2014 WL 10474969, at *10-11 (citing *Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1582-83 (2d Cir. 1983)). "The existence of a badge of fraud is merely circumstantial evidence and does not constitute conclusive proof of actual intent. However, the existence of several badges of fraud can constitute the requisite clear and convincing evidence of actual intent to defraud." *Gao,* 560 B.R. at 64 (internal citations omitted). Here, the record does not reflect the presence of any badges of fraud:

(1) *the lack or inadequacy of consideration*: The Defendant testified at trial that the money he distributed to himself from his IOLA was payment for legal services and for reimbursement of the installment payment that was mistakenly sent from the Defendant's personal account, as opposed from the Defendant's IOLA, to the Plaintiff. The Plaintiff did not provide any evidence to controvert the Defendant's testimony.

(2) *the family, friendship or close associate relationship between the parties*: The Defendant testified that he previously represented Helane Karon David and Michael Petrillo and would often hold funds on their behalf. The Defendant also testified at trial that his relationship with them was close enough for him to represent them without taking a fee in connection with their 2009 post-judgment depositions despite ending the formal attorney-client relationship a year prior. In his 2009 Deposition, Michael Petrillo testified that the Defendant was the only person whom he could trust. Ex 21. However, the Plaintiff did not submit any other evidence that indicated that the relationship between the Defendant and the Judgment Debtors was anything

other than a professional one. The Defendant is not a family member, friend or close associate of the Judgment Debtors simply by virtue of earning their trust and providing legal services for two depositions without taking a fee.

(3) *the retention of possession, benefit or use of the property in question*: It is undisputed that the Defendant did not return either his legal fee or installment reimbursement to the Judgment Debtors, the transferors.

(4) *the financial condition of the party sought to be charged both before and after the transaction in question*: The financial condition of the Judgment Debtors cannot be gleaned from the record. Although the Plaintiff alleged that the Transfers rendered the Judgment Debtors insolvent, it failed to call the Judgment Debtors as witnesses and provided almost no evidence concerning the Judgment Debtor's financial condition before or after the Transfers. Complaint ¶¶ 19, 45. The only conceivable evidence concerning the Judgment Debtors' financial condition is a portion of the transcript from Michael Petrillo's 2009 deposition, where he testified that he used money orders instead of a company checking account to pay the Plaintiff to prevent the possibility of a check bouncing because he "never had enough cash flow." Ex. 21. Petrillo then testified that he would instruct the Defendant to disburse money that he provided to be held in the Defendant's IOLA if he "did not have it in the business." *Id.* The name of the business was not identified in the portion of the deposition provided to the Court. While Petrillo testified that his business experienced cash flow issues, he also testified that he would cover his business' debts. Although Petrillo's testimony might establish that one of the Judgment Debtors, the unidentified business, experienced financial issues, his testimony does not contemplate the financial condition of Helane Karon David, himself or any of the other businesses who constitute the Judgment Debtors. In fact, Petrillo testified that he was financially stable enough to cover his business'

debts when necessary. *Id.* The evidence submitted does not permit the Court to make a finding concerning the financial condition of the Judgment Debtors.

(5) *the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and* (6) *the general chronology of the events and transactions under inquiry*: The fifth badge of fraud represents the precise circumstance that the Plaintiff urges the Court to accept as true. It is undisputed that the Judgment Debtors had a judgment entered against them and that they did not satisfy the Judgment. The Plaintiff alleges that the Judgment Debtors hid their money in their attorney's IOLA, closed their own bank accounts and transferred the money in small enough amounts to avoid detection. As discussed above, this analysis is only limited to the funds that were actually transferred to the Defendant, his legal fees and the installment reimbursement. The Defendant represented the Judgment Debtors in challenging the Judgment, negotiating the So Ordered Stipulation and Deferral Agreement and throughout the collection process, where the Judgment Debtors paid $60,000 towards satisfaction of the Judgment. In sum, the Judgment Debtors paid an attorney to help challenge and satisfy a judgment that was entered against them, which cuts against a finding of actual fraudulent intent. The retention of an attorney is not evidence of an actual intent to defraud an adversary.

The record reflects that none of the badges of fraud are present with respect to the payment of the Defendant's legal fees or reimbursement of the installment payment. Therefore, the Plaintiff is not a creditor of the Defendant pursuant to DCL§ 276.

*3. Constructive Fraud Application*

The record before the Court precludes a finding that a fraudulent conveyance occurred pursuant to DCL §§ 273-275. To prove a constructive fraudulent conveyance claim, a plaintiff

must establish that the conveyance was made without fair consideration. DCL §§ 273-275. Fair consideration is given for property:

> a. When, in exchange for such property ... as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
> b. When such property ... is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property ... obtained.

DCL § 272. "The fair consideration test is profitably analyzed as follows: (1) ... the recipient of the debtor's property must either (a) convey property in exchange or (b) discharge an antecedent debt in exchange; and (2) such exchange must be a fair equivalent of the property received; and (3) such exchange must be in good faith." *Sharp*, 403 F.3d at 53 (internal citations and quotations omitted). The burden of proof to establish that the conveyance was made without fair consideration is on the Plaintiff. *Neshewat v. Salem,* 365 F. Supp. 2d 508, 520 (S.D.N.Y. 2005). The only conveyances at issue are the legal fees and installment reimbursement paid directly to the Defendant from the Defendant's IOLA.

    *a.   The Defendant's Legal Fees*

       The Defendant testified at trial that he received funds in consideration for his legal services. The Plaintiff has not provided any evidence to contradict the Defendant's testimony. Moreover, the Plaintiff did not allege that the Defendant's fees were in excess of the services rendered. The fairness of the consideration for the Defendant's legal fees was never placed in issue, and no time records or allegations regarding time records were submitted. As such, the Court cannot identify the services that the Judgment Debtors paid for, let alone whether the fee was equivalent in value. The Plaintiff failed to prove that the Defendant did not provide the "fair equivalent" in legal services for the fees he received. *Sharp,* 403 F.3d at 53.

*b.  The Installment Reimbursement*

The Defendant testified that he received a reimbursement for a $10,000 installment payment mistakenly sent to the Plaintiff from the Defendant's personal account. The Defendant testified that the Plaintiff accepted the payment. The Plaintiff did not controvert the Defendant's testimony nor did it allege that the reimbursement was in excess of the subject installment payment. Instead the Plaintiff vaguely asserted that all funds flowing to and from the Defendant's IOLA were conveyed without consideration. Complaint ¶¶ 32, 70, 77, 82-83. The record shows that the Defendant received $10,000 as a reimbursement from the Judgment Debtors to compensate for the $10,000 he provided as an installment payment discharging a part of the debt the Judgment Debtors owed pursuant to the So Ordered Stipulation and Deferral Agreement. The reimbursement is the equivalent of the value that the Defendant supplied to the Judgment Debtors.

Because the lack of consideration is an essential element of a constructive fraudulent conveyance claim, the Plaintiff failed to prove a cause of action for a constructive fraudulent conveyance. Having failed to establish that the Defendant is not the recipient of a fraudulent conveyance under any section of the DCL, the Plaintiff is not a creditor of the Defendant.

**III.    *Claims Arising Under Section 523 of the Code***

Although the Court has concluded that the Plaintiff is not a creditor of the Debtor and therefore lacks standing to bring a non-dischargeability proceeding against the Defendant, the Defendant's conduct does not fit within either § 523(a)(4) or § 523(a)(6).  Even if the Plaintiff were a creditor, the Defendant's liability to it would be discharged for the Plaintiffs' failure to prove a *prima facie* case with respect to either of its section 523 claims.

## A. Burden of Proof

The burden of establishing an exception to discharge of a debt under section 523(a) is on the Plaintiff, who must meet this burden by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 290–91 (1991). "Exceptions to discharge under § 523 must be . . . construed so as to give the maximum effect to the Code's policy of providing honest but unfortunate debtors with a 'fresh start.'" *Jadusingh v. Crossfield (In re Crossfield),* No. 11-09191 (REG), 2012 WL 3637919, at *3 (Bankr. E.D.N.Y. Aug. 22, 2012) (citing *Scheidelman v. Henderson (In re Henderson),* 423 B.R. 598, 624 (Bankr. N.D.N.Y. 2010)). "As the consequences to a debtor of finding a debt excepted from discharge are severe, exceptions to discharge are to be narrowly construed and all doubts should be resolved in the debtor's favor." *Indo-Med Commodities, Inc.  v. Wisell (In re Wisell),* 494 B.R. 23, 34-35 (Bankr. E.D.N.Y. 2011) (citing *Denton v. Hyman (In re Hyman),* 502 F.3d 61, 66 (2d Cir.2007), *cert. denied,* 555 U.S. 1097, 1097 (2009)).

## B. Section 523(a)(4)

Section 523(a)(4) excepts a debt from discharge that arose from debtor's "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Because the Plaintiff did not specify which branch of section 523(a)(4) it has filed under, the Court will address whether the alleged debt arose from the Debtor's fraud or defalcation while acting in a fiduciary capacity, embezzlement, and larceny separately.

### 1. Fraud Or Defalcation While Acting in a Fiduciary Duty

Under section 523(a)(4), a debt "for fraud or defalcation while acting in a fiduciary capacity" is nondischargeable. The Plaintiff bears the burden of establishing by a preponderance of evidence that each element of the statute has been met. *Grogan,* 498 U.S. at 290-91; *Chao v.*

*Duncan (In re Duncan),* 331 B.R. 70, 76 (Bankr. E.D.N.Y. 2005). To prevail under the discharge exception for fiduciary fraud or defalcation, a plaintiff must show that: "1) an express [or technical] trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the [plaintiff] at the time the debt was created." *Chitester v. Watterson (In re Watterson),* 524 B.R. 445, 451 (Bankr. E.D.N.Y. 2015) (citing *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir. 1987)).

The Court must analyze the meaning of "fiduciary capacity" before ruling on this count. "Fiduciary capacity" is not defined in the Bankruptcy Code, but the bankruptcy courts in this circuit have made clear that the definition of fiduciary under this statute is narrow and specific. The "broad general definition of fiduciary, involving confidence, trust and good faith, is not applicable in dischargeability proceedings under § 523(a)(4)." *Watterson,* 524 B.R. at 451 (quoting *Wisell,* 494 B.R. at 38) (quoting *Zohlman v. Zoldan,* 226 B.R. 767, 772 (S.D.N.Y.1998)). "The fiduciary relationship must be pursuant to either an express or technical trust, not to 'constructive or implied trusts, or any trust where the existence of the trust is created merely on the basis of wrongful conduct.'" *Id.* (quoting *Zohlman,* 226 B.R. at 772).

The Plaintiff must establish that the Defendant owed the Plaintiff a fiduciary duty at the time the debt was created. The Plaintiff has failed to allege the existence of any trust, let alone an express or technical trust. The Defendant's only connection to the Plaintiff was that he represented clients who owed the Plaintiff money. "It is well settled that an attorney acts as a fiduciary to his or her client." *JP Morgan Chase Bank, NA v. Selig (In re Selig),* No. 17-08107 (REG), 2018 WL 889350, at *5 (Bankr. E.D.N.Y. Jan. 24, 2018) (citing *The Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes),* 183 F.3d 162 (2d Cir. 1999)). However, "[t]he fact that the Defendant owed a fiduciary duty to [the Judgment Debtors] does not serve to

extend such duty to the Plaintiff." *Id.* Accordingly, the Plaintiff has failed to establish a claim under § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity.

*2. Embezzlement*

"Embezzlement under section 523(a)(4) has been defined as the 'fraudulent appropriation of money by a person to whom such property had been entrusted or into whose hands it has lawfully come.'" *Wisell,* 494 B.R. at 40 (quoting *Gore v. Kressner (In re Kressner),* 155 B.R. 68, 74 (Bankr. S.D.N.Y. 1993)). The Plaintiff must establish three elements to sustain a claim under § 523(a)(4) for embezzlement: "(1) the debtor rightfully possessed another's property; (2) the debtor appropriated the property for use other than the use for which the property was entrusted; and (3) the circumstances implied a fraudulent intent." *Northeast Remarketing Servs., Inc. v. Guthier (In re Guthier),* No. 09-50008 (MCR), 2010 WL 1443989, at *6 (Bankr. N.D.N.Y. Apr. 9, 2010). Embezzlement does not require a fiduciary relationship but does require an intent to defraud. *Id.* "Intent to defraud is a higher standard than the 'scienter' required under defalcation." *Wisell,* 494 B.R. at 40. (citing *Hyman,* 502 F.3d at 68).

The Court must first determine whether the funds received by the Defendant are identifiable as belonging to the Plaintiff. *Glenn v. Hrim (In re Hrim),* 196 B.R. 237, 242 (Bankr. N.D.N.Y. 1993). Here, the Defendant rightfully possessed the property, money, of his clients, the Judgment Debtors. The Plaintiff has not provided any evidence to establish that those specific funds in Defendant's IOLA were the property of the Plaintiff. If anything, the Plaintiff admits that the funds in the Defendant's IOLA belonged to the Judgment Debtors. Complaint ¶19. Further, the Plaintiff must establish that the Defendant appropriated the funds in the Defendant's IOLA. The Defendant has maintained throughout the adversary proceeding that he received and distributed funds from and to, or on behalf of, the Judgment Debtors as instructed by the

Judgment Debtors, including the receipt of legal fees and an installment reimbursement in his personal capacity. The Plaintiff has neither alleged nor provided evidence establishing that the Defendant deviated from the Judgment Debtors' instructions at any point. In light of the Plaintiff's failure to establish the first two elements, the Court need not reach the question of the Defendant's intent.

*3. Larceny*

"In the context of Section 523(a)(4), larceny has been defined as the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *Crossfield,* 2012 WL 3637919, at *6 (citing *Farina v. Balzano (In re Balzano),* 127 B.R. 524, 532 (Bankr. E.D.N.Y. 1991)) (internal citations omitted). Unlike embezzlement, a defendant must possess the unlawful intent at the time of the original taking. *Adamo v. Scheller* (*In re Scheller*), 265 B.R. 39, 53 (Bankr. S.D.N.Y. 2001) (internal citations omitted). In addition, "[t]he larceny exception cannot apply where the debtor's original possession of the [property] was lawful." *Crossfield,* 2012 WL 3637919, at *6 (citing *Brown v. Heister* (*In re Heister*), 290 B.R. 665, 674 (Bankr. N.D.Iowa 2003)).

The Plaintiff not only fails to provide evidence of any wrongful taking, it asserts that the Judgment Debtors gave their money to the Defendant willfully in furtherance of a scheme to hide it from the Plaintiff. Even if the allegations in the complaint are true, the Defendant's original possession would still be lawful, as he received money from his clients to hold in his IOLA at his clients' request. As a result, the Plaintiff has failed to establish a claim under section 523(a)(4) for larceny.

Accordingly, the Court finds that the Plaintiff has failed to prove a *prima facie* case that

the debt allegedly owed to it by the Defendant is nondischargeable under section 523(a)(4) of the Code. The Plaintiff's claim pursuant to section 523(a)(4) is dismissed.

## C. Section 523(a)(6)

Under section 523 of the Bankruptcy Code, a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from a debtor's discharge. 11 U.S.C. § 523(a)(6). The term "entity" includes a person. 11 U.S.C. § 101(15). The term "person" includes a corporation. 11 U.S.C. § 101(41). "The terms 'willful' and 'malicious' are separate elements that must each be proved." *Zaretsky, et. al. v. Zaretsky (In re Zaretsky),* No. 16-8110 (REG), 2018 WL 2085614, at *3 (Bankr. E.D.N.Y. May 3, 2018).

### 1. Willful

In the context of section 523(a)(6), the term "willful" requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998). "Merely showing that a debtor committed a conscious act that resulted in an injury is not sufficient. The act must be shown to have been done with the intent to cause the injury." *Rocco v. Goldberg (In re Goldberg),* 487 B.R. 112, 127 (Bankr. E.D.N.Y. 2013). Therefore, the Plaintiff must prove by a preponderance of the evidence that the Defendant not only intended to hold and distribute his clients' money, the *act*, but that he intended to deprive the Plaintiff of the money owed to it by the Defendant's clients, the *injury*.

The Plaintiff has failed to distinguish the Defendant's intent to receive and distribute funds on behalf of his clients, the *act*, from the Defendant's alleged intent to prevent the satisfaction of the Judgment, the *injury*. The facts show that the Defendant did disburse, on his clients' instructions, $60,000 in installment payments between September, 2007 and February, 2008 pursuant to the So Ordered Stipulation and Deferral Agreement. Further, the Defendant

testified that he withdrew from representing the Judgment Debtors when they defaulted pursuant to the So Ordered Stipulation and Deferral Agreement. Although the Defendant admitted that he subsequently represented Helane Karon David and Michael Petrillo in their post-judgment depositions, the Defendant testified that he did not take a fee.

The Plaintiff urges the Court to infer the Defendant's willful intent based on the circumstances surrounding the Defendant's representation of the Judgment Debtors, including the deficiencies in the Schedule of Disbursements and Schedule of Deposits and the questionable distribution tactics, i.e. issuing numerous checks in small denominations contemporaneously instead of one single check. While certainly not condoned by the Court, these circumstances do not by themselves establish the Defendant's willful intent to injure the Plaintiff. Even if the Judgment Debtors intended to injure the Plaintiff, the Court would still be unable to distinguish the Defendant-attorney's alleged intent from the Judgment Debtors' intent as executed by their attorney, who was obligated to comply with their directives pursuant to the NYRPC. The Defendant testified at trial that the small distribution denominations that were contemporaneously disbursed were specifically requested by the Judgment Debtors. The Plaintiff has not established any facts to controvert the Defendant's testimony. The Plaintiff neglected to obtain testimony from the only parties who would have had knowledge of an alleged scheme to thwart the Plaintiff's collection efforts – the Judgment Debtors.

As such, the facts before the Court indicate that the Defendant assisted his clients in challenging the Judgment in the State Court Action and paying the Plaintiff pursuant to the So Ordered Stipulation and Deferral Agreement, and withdrew as counsel for the Judgment Debtors when they defaulted in paying the Plaintiff. The Plaintiff has not established that the Defendant

willfully intended harm to the Plaintiff in connection with his representation of the Judgment Debtors.

*2. Malicious*

Even if the Court finds that the Defendant willfully intended to cause the Plaintiff's injury pursuant to section 523(a)(6), the Plaintiff has failed to establish that the Defendant's conduct was "malicious." In the context of section 523(a)(6), the term "malicious" means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti),* 94 F.3d 84, 87 (2d Cir. 1996). Malice may be established on a constructive or implied basis via the acts and conduct of the debtor in the context of the relevant circumstances. *Goldberg*, 487 B.R. at 128 (quoting *Stelluti*, 94 F.3d at 88). Malice may be implied "when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *Selig,* 2018 WL 889350, at *7 (citing *Yash Raj Films (USA), Inc. v. Akhtar (In re Akhtar)*, 368 B.R. 120, 130-31 (Bankr. E.D.N.Y. 2007)). The *Blankfort* court summarized the standard as follows:

> [T]he statutory element of maliciousness will be found by imputation where the debtor has breached a duty to the plaintiff founded in contract, statute or tort law, willfully in the sense of acting with deliberate intent, in circumstances where it is evident that the conduct will cause injury to the plaintiff and, most important, and under some aggravating circumstance such as to warrant denial of discharge. In the absence of a finding of 'Biblical malice,' an ordinary tort or breach of contractual or statutory duty generally is not sufficient to deny discharge under subsection (6) without some aggravating circumstance evidencing conduct so reprehensible as to warrant denial of the 'fresh start' to which the 'honest but unfortunate' debtor would normally be entitled under the Bankruptcy Code.

*Bundy Am. Corp. v. Blankfort (In re Blankfort*), 217 B.R. 138, 144 (Bankr. S.D.N.Y. 1998).

As discussed above, the Defendant owed a duty to his clients, the Judgment Debtors, to abide by their instructions concerning the depositing and distribution of their funds and not to the Plaintiff. Further, the Plaintiff has failed to establish any aggravating circumstances demonstrating conduct warranting the denial of the fresh start to which an honest but unfortunate debtor would normally be entitled under the Bankruptcy Code. *Id.*

The Judgment Debtors, as the Defendant's "master[s] through the course of the professional relationship," instructed the Defendant to receive and return funds to and from the Defendants' IOLA on behalf of the Judgment Debtors. *Sept. 11 Litig.,* 236 F.R.D. at 170. The facts before the Court show that the Defendant merely followed those instructions.[10] The testimony of Helane Karon David and Michael Petrillo in their post-judgment depositions from 2009 support the Defendant's testimony regarding his practice of holding funds for the Judgment Debtors pursuant to these instructions. Ex. 20-21. To say that doing so is "without just cause" would undermine the protections provided to clients by the NYRPC. In fact, abiding by the instructions of a third-party in spite of clear instructions stated by a client, as the Plaintiff suggests the Defendant should have done, would violate the Defendant's duties set forth in the NYRPC. Based on the record before the Court, the Plaintiff has not established that the Defendant's conduct in holding funds on behalf of his clients, as his clients instructed and pursuant to his duties under the NYRPC, is evidence of malice with respect to the Plaintiff.

The facts before the Court do not permit a finding that the Plaintiff's inability to satisfy its Judgment was willfully and maliciously caused by the Defendant. Therefore, the Plaintiff has failed to establish a *prima facie* case pursuant to section 523(a)(6).

---

[10] Nevertheless, the Court notes several deficiencies in following the Judgment Debtors' instructions, including the failure to memorialize the retainer agreements and transfer requests in writing. The Court does not make any determination regarding this conduct as it lies outside the confines of this adversary proceeding, and the Judgment Debtors are not parties to this adversary proceeding.

### *Conclusion*

For all of the foregoing reasons, the Court finds that the Plaintiff has failed to prove a

*prima facie* case for each of the four causes of action. Accordingly, the Complaint is dismissed in

its entirety.  The Court shall enter a judgment consistent with this Decision forthwith.



**Dated: Central Islip, New York**
**January 13, 2020**

_____
**Robert E. Grossman**
**United States Bankruptcy Judge**